The next case today is Amy Cohen et al. v. Abigail Walsh et al. Appeal No. 21-1032. Attorney Bonsignore, please introduce yourself for the record and proceed with your argument. May it please the Court, Robert James Bonsignore for the appellants. I will endeavor to reserve two minutes for rebuttal, keeping my eye on the clock. I resent the appellant objectors. They are female Brown University varsity athletes who were denied due process and caused to suffer harm by changes voluntarily made to a class action settlement that was finally approved with a final judgment entered no more period of appeal decades ago. As clearly set forth in our papers with ample granular detail, in addition to having direct ramifications upon the rights and interests of current and future absent class member female athletes at Brown University, if this is not reversed, the District Court's approval will have far-reaching implications serving as a roadmap for counsel in future class action settlement settings to strip absent class members of their recovery by circumventing due process rights. The express language of Rule 23 is clear, and so are the interpretive cases from the Supreme Court in this District. What express language is that, counsel? Well, in Rule 23E-2A, it requires a representative. No, it does not. You said that in your brief, and that's simply not so. What Rule 23E requires is that the District Court consider the adequacy of representation. It doesn't require an explicit finding, and the question of adequacy was broached to the District Court in this instance, and there is no reason, I suggest, to assume that Judge McConnell didn't consider it. Because of all that the rule requires him to do, we've approved in a lot of different contexts implicit findings before, but there's no express finding required. I can roll with that, Your Honor. There's no reason to believe that the class representatives here who have served in that capacity for decades at this point, I mean, on what basis do you claim that they are inadequate? Okay, I can address that, Your Honor, very forcefully, and I disagree with what? You disagree that they have served for years? No, I believe that they served at the time that they served, and I thought that they did a good job adequately. Well, not at the time that they served. They have been serving. They have been serving since the class was first certified. There was no motion made in the District Court to decertify the class that I've been inclined. Did you make such a motion? I don't believe that's necessary to object. I'm not saying whether it was necessary or not. I merely asked if you made such a motion. No, Your Honor, I did not. Did you make a motion to replace or augment the class representatives? I was brought in at the final approval. When I say you, I mean on behalf of the parties that represent. There is no such motion, so the question is, is there some reason to believe, apart from your dissatisfaction with the settlement as a whole, and that will wash out when we determine whether the settlement was fair, adequate, and reasonable, is there some reason to believe that these class representatives weren't doing the job that the District Court appointed them to do? Absolutely, Your Honor. May I go through them? Sure. Okay, just backtrack for one second. They did a great job. No one's denying that. They dropped the ball at the end. I'm not going to go over the areas where Brown University intentionally violated the agreement by pitting race against gender. There's no need to go down that argument, which could be perceived as pejorative. The facts speak for themselves, and it does go to whether they can be trusted in the future. However, the getting close to whether the class representatives can be trusted? No, no, no. We're talking about the adequacy of the class representatives. Right, and so what do you mean we don't know whether they can be trusted in the level of the adequacy? I'm going to get into very specifics if I'm given the permission to speak on it. One bit of evidence that they weren't adequate is that when Brown University should have been put up for sanctions, even assuming that they're rare as hen's teeth, they folded and gave up rights. The class representatives were student athletes 20 years ago. They ceased being members of this class for two decades, the beginning and the end of the analysis. Excuse me, counsel. Yes? Please be precise. They never ceased being members of this class. They're within the class as it was certified, and you haven't asked for the certification of a new class that would exclude them. Well, the definition... I understand that they're no longer undergraduates at Brown, all right, but there's got to be some reason beyond that why their representation isn't adequate, because both this court and the Supreme Court have said that you don't have to continually, you know, be subject to whatever the institutional program is in order to continue as a class representative. The Supreme Court said that in Sosterno and Iowa. We said it in Ross. So there's got to be some reason that you think these class representatives aren't doing the job. I'll continue after the court hearing. I'll continue after pointing out the definition of the classes and future Brown women students and potential women students who participate or will seek to participate in intercollegiate athletics at Brown. They are not present athletes. They're also not similarly situated with the absent class members because they had no interests that were coincident with the absent class members. They share no commonality of absolutely no stake, no skin in the game, in the outcome of the settlement. There is no evidence that they participated in the negotiation of the new settlement. There is no evidence of vigorous representation during the negotiation of the settlement that they represented these absent class members. There was no evidence, I will say again, that they fell within the class definition because they're not present. The record actually shows advocacy by the class representatives before a mediator to reach this settlement. It seems to me that your arguing from results backward. You think the settlement is unfair and is an abuse of discretion because you would like more benefits to the existing group of athletes. But I take it your strongest argument is earlier there was no agreed upon date for termination of the settlement, but now there is an agreed upon date and your group of present athletes, who some of whom will graduate before that day, are very unhappy with that. So could you just, I know I'm shifting your argument, but can you please tell us why we would find the terms of settlement, these of the particular women you represent, to be unfair and inadequate? Thank you. Thank you, Judge Lynch. I'm happy to shift as the court requires, but this is here to clarify points in the briefing, the papers. So basically, the duration of the protections is a huge, huge loss. Instead of being indefinite, it now ends in August of 2024. The new settlement also trades away an enforcement of breach procedure, which is quick and inexpensive full-on litigation from scratch. The litigation, the original litigation, is very well briefed in the papers that we submitted, the opening brief, it goes on for six pages. It took six years to get done. And so rather than having an enforcement procedure, which worked four times during this class period, including the most recent time when they willfully broke it to serve the purpose of having this settlement that's before the court put into place by getting race against gender, four times it worked perfectly. The objective benchmarks were based upon gender, and they were easily enforced. You'd go to court, file a motion for discovery if necessary. There was a quick resolve, not a six-year litigation from scratch. It also treats the class members, the absent class members, unfairly because it's inequitable. They are inequitable relative to each other in violation of Federal Rule of Civil Procedure 23-E-2-B. Okay, the other side says, look, some of the class members actually were benefited by the settlement because the sport was reinstated as a varsity sport and not just a team sport. And in addition, a funding commitment was made. Now, if that's true, then we're talking about a what has happened to the different group of female students that you say has been unfair to them out of the settlement, putting aside the end date? I'm happy to address that, Your Honor. And there's one other thing, one important point. Unless you focus and aim at a target, you're never going to and everything else. Brown will never live up to what they have to live up to. And there's evidence in the record that supports that they're not interested in that or have not been following it as they should. With respect to the inequitable treatment among class members on different sports teams, the settlement agreement benefits those on two teams that were reinstated, equestrian and interest and rights under the joint agreement relative to the preservation of three other newly admitted teams, skiing, squash, and golf. It further trades away the rights of members on all other teams for reinstatement of those two sports. I'm sorry, now on the skiing, squash, and retained as varsity teams, but the women's teams were not? Is that the argument? They did away with them. Okay, so they did away without regard to gender as to the varsity status of those three sports. Is that correct? Well, your Honor, the agreement only speaks to keeping gender equality. It doesn't go into Brown's thought process or whatever. No, no, I'm asking about results. I'm not asking about thought process. I'm trying to find out if the inequity is gender-based inequity, exactly what teams we're talking about that are being treated differently than the male teams. Well, the male teams are not addressed in the agreement. This only does away with the female teams, and so I suppose Brown is free to do whatever they want. Isn't the gist of the agreement that Brown has now committed to keep certain women's teams, whereas before Brown was only bound by substantial proportionality, so they could eliminate any women's teams they wanted as long as they eliminated a proportionate number of men's athletic opportunities? Yeah, I think that that's the point, your Honor. At this time, they upended a settlement that benefited an entire group of absent class members, and they inserted preferences that pit one female athlete against another. They've pitted one class member against another. A settlement agreement, that's an error as a matter of law. You say that, but no member of any of the teams that you say were disadvantaged has joined as an objector. The objectors here are all members, as I understand it, of the hockey and gymnastics teams, neither of which were affected adversely by the settlement. Indeed, they were benefited by the settlement because those teams were locked in by the settlement. I just checked, your Honor, and that is an accurate statement. However, they are valid class members, and they are able to raise these objections on behalf of any other class member. That's true, but it says something about whether or not what you claim to be a manifest disadvantage was really a manifest disadvantage that no member of any of the affected teams has objected to the settlement. Well, I think that that's a question of fact, and I'm trying to focus the court on errors of law. That's what I'm trying to do, your Honor. I think there are facts that are involved. I don't think that that's one with respect that should be considered here because the class members stand on equal footing, and what they're saying is they're pitted against each other. Okay, thank you. Thank you. I now have that point. I appreciate your argument. Thank you. Counsel, why don't you take one minute to wrap up? I know you've reserved some time, but we've kept you quite a bit over. I can reserve my time for the rebuttal. Basically, your Honor, what I'm trying to get across to the class members is a part of due process, and here we had class members that don't fit within the class definition. With respect, they're not present, and additionally, your Honor, with due respect, the changes to the agreement were very material, and they were made without need. This didn't come on the heels of the decision that we've been talking about. Will this one be prejudiced? Will that team be prejudiced? It came on the heels of Brown University, the chancellor and the president, getting together and conspiring willfully to violate the agreement to pit race against gender. That is not a benchmark to make a change in a settlement that serves as the landmark across the country for women's rights. How goes the nation? This was the seminal case, and to have Brown University come in on that basis, drum up a fake breach, it's unjust, and it doesn't comply with the law. I'll go on later. Thank you. If you would, for the time being, mute your audio and video, and Ms. Labinger, we'll hear from you. Good morning. May it please the court, Lynette Labinger for Plaintiffs' Appellees. I have been serving as class counsel, and the plaintiffs have been serving as class representatives for almost 30 years. There's never been a time when we have not been actively involved in this case. We litigated it. This court is well aware of the groundbreaking decision written in 1993 that set a lot of the standards. The law has moved on incorporating those standards, but we are now into the point where we've refined how one looks at what is substantial proportionality as measured under the first part of the three-part test. And what this case demonstrated to us was that there were limitations of the joint agreement. The joint agreement, when we adopted it, was a compliance plan. We had a judgment, which we litigated, as the court is aware, and got a judgment on the merits that Brown was in violation of Title IX. The district court then negotiated the joint agreement in 1998, which was subjected to notice and hearing. And at that point, we adopted a two-part step down. 3.5% was the permitted variance. And if Brown cut any teams, and the incentive there was to keep Brown from cutting any teams, it would drop down to 2.25%, which we thought was a pretty small standard at that time. And it was a powerful deterrent. Brown did not We did not have to litigate this at any time before this. Contrary to what my brother says, when Brown came below or exceeded the permitted variance, we worked with them to get back on track. It was only in 2020 when Brown decided that it was going to cut its program and initially cut its program so that at least as many men proportionately, in fact, more men were cut from the program. And then within a very short period of time reversed itself after stating that if we reversed ourselves, we'd be in violation of the consent agreement. We immediately sprung to action. We consulted with our class representatives. We consulted with some 50 members of women on the affected five teams that were cut. And we jumped right into action. We, you know, it went fast, but it was certainly not an easy enforcement proceeding. Lots of discovery, lots of motions briefing, and then the court ordered us into mediation. And I consider Judge Sullivan a miracle worker because we were able to come up with a mediated settlement. And I'd like to point out that that settlement restored two of the five teams cut and not all of them as we were seeking because with the limitations of the 2.25%, Brown had a very strong argument that at most they'd have to reinstate one team to get the math right. And they also had the threat that they'd just cut another men's team. We got them to restore two teams immediately. We did not pit one athlete against the other. Brown made the decision what teams to restore. And I think it's very important that none of women on the teams that are so terribly disappointed not to be restored filed an objection because they were working with us and they understood what the issues were in this case. We also provided that for the remaining life of the agreement, which we picked as 2024, which will be about 25 to 26 years from the outset of this agreement, that Brown could not cut any more women's teams and that if they restored any of the men's teams that they had to put the women's teams back as well. And at the conclusion of the agreement in 2024, which we believe all of the 12 objectors will have graduated by then, Brown will still be subject to Title IX. We believe that the standards of Title IX have evolved and that 2.25% is now too generous for an institution the size of Brown, which has about 890 or 900 athletes, that that is too big a gap. It will support one or more of these viable teams like skiing, squash, or golf. And that is better for the athletes at Brown, the women athletes, in the future once these no-cut guarantees expire. And so we believe that that the settlement that we came up with serves both the short-term interests of the class members and the long-term interests of the class members. And that as a result, the district court was well within its discretion in approving a settlement. This court has indicated, consistent with Rule 23, that a settlement achieved as we did after a fully developed record and arm's-length negotiation assisted by the court bears a presumption of reasonableness. And so we think that we would urge the court to affirm on appeal. I would also point out that as Judge Selya mentioned, the case law, it's settled law. We're not, our class representatives are entitled in the absence of any change of circumstances, here there are none, we were actively involved in enforcing this settlement throughout the litigation and serving the class interest, that they remain adequate representatives. This argument, the one that's presented to this court, was not actually argued below. Below, the objectors claimed that this was a settlement class newly to be certified and didn't even present the arguments that are argued to you. But be that as it may, the case law is settled. There is a difference between mootness and adequacy and everything that we've done factually in this case demonstrates that the class representatives and their counsel have adequately, diligently, persistently represented the interests of the class for almost three decades. And unless there are any questions, I will rest there. Thank you, Ms. Labinger. Thank you. We'll hear from Ms. Coburn. If you would mute your audio and video, Ms. Labinger, thank you. Please proceed. Thank you, Your Honor, and may it please the court, Marcella Coburn for Brown University, its president, Christina Paxson, and its athletic director. The district court acted well within its considerable discretion when it approved the settlement as fair, reasonable, and adequate, and objectors have presented no basis to overturn that decision. Objectors' argument that the class representatives are per se inadequate because they've graduated from Brown is refuted by decades of Supreme Court precedent dating back to Sosno versus Iowa. And the district court's conclusion that the settlement was substantively reasonable was also well within its considerable discretion. Settlement has a presumption of reasonableness. It was negotiated at arm's length after extensive discovery. It provides adequate relief to the class, treats the members of the class fairly, and the overall reaction of the class, noting that these 12 objectors are the only objectors out of hundreds of people, illustrates its reasonableness. And I do want to make one response to objectors' allegations that Brown cannot be trusted, that it has pitted race and gender interests against each other. We set out in our briefs, first of all, the extensive evidence that had this case gone to the merits, there would have actually been no violation of the joint agreement. But beyond that, the district court had access to the entire record in this case, along with both sides' arguments and extensive briefing, and it reached the exact opposite conclusion about whether Brown could be trusted. Judge McConnell specifically determined that President Paxson is dedicated to gender equity in athletics, she's dedicated to Title IX, and that Brown and she have been dedicated to this joint agreement. It is hard to imagine a more resounding rejection of objectors' entire theory of how this settlement came to be than the district court has already concluded. And with that, Your Honors, if you all have no further questions, I'm happy to rest on the booze. I just wanted to ask you very briefly, the Second Circuit opinion in Irvin against Harris, to the extent that you can speak to it, is it simply wrongly decided or is this case sufficiently distinguishable? I'm afraid I can't speak to it, Your Honor. If you could give me just a little bit. That's fine. I've done my research. Appreciate it. Thank you, Your Honor. Other questions? All right. Thank you to all counsel. Mr. Bunch, you are? Yes. Thank you. I'll refer to A, Appendix 338. Here's an idea. Could we use this moment where anger and frustration, comma, especially from track and squash, comma, are intense and building to go after the consent degree once and for all, question mark? Could we channel all this emotion away from anger at Brown to anger with the court and kill this pestilent thing? The argument would be that the consent degree is forcing us to eliminate these sports and the court was to away from anger at Brown to anger at the court and kill this pestilent thing. The analysis where counsel points to the class representatives, the objectors rather, and points to the few is not consistent with the law. The duty, the fiduciary duty of the court and the fiduciary duty of the class representatives places a burden on them that is not on absent class members, some of whom are not aware. I'm not sure how people who are entering Brown that will graduate 2024 and beyond would even know about what's going on now. They wouldn't. That's why the duty of the court in a class action setting is so far and above that in a regular settlement that it's incorporated in Supreme Court law. I point the court's attention to Larson v. AT&T Mobility 687F3-109 at pages 132 to 133. It's a Third Circuit case. It's difficult to understand how the class representatives, none of whom were Sprint customers at the time the settlement agreement was executed, had the interest, much less incentive, to stop Sprint from enforcing the flat rate against its current customers. I'd also point the court to Phillips Petroleum Company v. Schutz 472 U.S. 787 at page 812. The due process clause, of course, requires that the named plaintiff at all times adequately represent the interest of the absent class members, and that's cited Hainsbury v. Lee. This circuit has also made clear that the district court has a continuing duty to assure adequate representation in Key v. Gillette 782F5 at page 7. Your Honor, there's no one disputes that they did a great job. When I grew up as a baby lawyer, I was a member of TLPK, and we worshipped this case. Over time, things change. We no longer have Tom Brady. We now have a new quarterback. Things change up over time. President Washington didn't remain in place. Over time, things change. Due to circumstances changing, the circumstances in this case require a reevaluation of the class members for the reasons that I set forth. They have no skin in the game. They have no interest coincident with the absent class members. Additionally, the terms that were altered were very significant. They weren't things that didn't make a big as a basis for enforcement. If they can breach the agreement, but according to the new settlement, that's not a basis to seek an enforcement. Your Honor, there's so many important issues, Your Honor, in this particular case that it's really going to be taken seriously. I think that what you are, but the request to remand it for further consideration and to work these things out is very important. This court is not in it to evaluate what sports brown cuts and what sports brown doesn't cut and the fairness of it all. This court is to enforce the law in such a way that due process is preserved, especially at a time when women's rights are under attack constantly. We're going backwards. This is not the case, especially given the pivotal impetus to this particular dispute, to go backwards, to backtrack on due process. And so, Your Honor, I'll close with that. Please give the absent class members, the absent class members, their due and let's send it back to the district court for further consideration and not affirm a ruling that was prompted by pitting race against gender and that cuts the rights of those from 2004 forward. I'm sorry, Judge Lynch, but that's what started the whole thing. If not for that, we wouldn't be here. I appreciate your passion. Thank you. Thank you again to all counsel and we will consider the case submitted at this time. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may disconnect from this meeting.